**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| MEDALLIA INC., | Case No. 6:21-cv-00532-ADA |
|     Plaintiff, | |
|   v. | |
| CONTENT SQUARE SAS, | |
|     Defendant. | |

**AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND**
**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff Medallia Inc. ("Plaintiff" or "Medallia"), by and through its counsel, files its First Amended Complaint against Defendant Content Square SAS ("Defendant" or "Content Square") and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action for infringement of Plaintiff's United States Patent No. 8,886,552 ("the '552 Patent") by Defendant under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

## PARTIES

2.      Plaintiff Medallia is a publicly traded corporation organized and existing under the laws of the State of Delaware. Medallia maintains an office within this Judicial District at 211 East 7th St., Floor 11, Austin, TX 78701.

3.      Upon information and belief, Defendant Content Square SAS is a company organized and existing under the laws of France, having its principal place of business at 5 Boulevard de la Madeleine, 75001 Paris, France.

4.      Upon information and belief, Content Square has over 700 employees located in France, Israel, the United States, Japan, the United Kingdom, and Germany, including in Austin, Texas.

## JURISDICTION AND VENUE

5.      This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over Content Square at least because Content Square has committed one or more of the infringing acts complained of herein in Texas and in this Judicial District. On information and belief, Content Square places infringing products into the stream of commerce, and/or causes such products to be placed into the stream of commerce, with the knowledge, understanding, and expectation that such products will be sold and/or used in Texas and in this Judicial District.  Additionally, upon information and belief, Content Square

maintains an office in this Judicial District, has multiple employees in this Judicial District, and is currently advertising multiple open sales, marketing, and engineering positions in this Judicial District. Plaintiff is informed and believes, and on that basis alleges, that Content Square derives substantial revenue from the sale of infringing products in this Judicial District, expects its actions to have consequences in this Judicial District, and derives substantial revenue from its acts in this Judicial District. Thus, a substantial part of the events giving rise to Medallia's claims occurred and continues to occur in this Judicial District.  On information and belief, Content Square has purposefully availed itself of the privilege of conducting activities within the State of Texas and within this Judicial District. Content Square's activities in the State of Texas and within this Judicial District are continuous and systematic and give rise to the liabilities that are the subject of this Complaint. More specifically, on information and belief, Content Square's activities include, inter alia, developing, promoting, and supporting infringing products that it offers for sale, sells, markets, advertises, and supports at least in part through personnel in Texas and in this Judicial District. *See, e.g.*, https://contentsquare.com/blog/the-digital-happiness-summer-roadshow-2019/ ("We're hosting our Austin roadshow at Maggie Mae's, an iconic 'bar' that screams Austin.") (visited on 5-23-21).

7.      Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). On information and belief, Content Square resides, and/or is deemed to reside, in this Judicial District and has substantial, systematic, and continuous contacts with this Judicial District. On information and belief, Content Square has committed acts of infringement in this Judicial District and/or has purposefully transacted business involving the accused products in this District including by, among other things, making, using, selling, offering to sell, and/or importing products in this Judicial District by itself or in conjunction with others, either directly or through intermediaries.

## **FACTUAL BACKGROUND**

8.      Medallia is a leader in customer, employee, citizen, and patient experience analytics. Medallia's award-winning SaaS platform, the Medallia Experience Cloud, captures

billions of experience signals across voice, video, digital, IoT, social media, and corporate messaging channels. Medallia has invested substantial time and money in developing its proprietary artificial intelligence and machine learning technology to automatically uncover predictive insights that drive powerful business actions and outcomes.

9.      The '552 Patent addresses a real need to evaluate user reaction and user experience when navigating through websites over a network. The '552 Patent is an improvement over pre-existing computer technology that enables more accurate and interactive analysis of user interaction and feedback collected on the websites over the network in real time. By improving the underlining computer technology for user feedback analysis, the '552 Patent has achieved commercial success as exemplified by Medallia's award-winning SaaS platform, the Medallia Experience Cloud, which leads the market in understanding and management of experience for customers, employees, patients and citizens. The '552 Patent invention can reduce churn, turn detractors into promoters and buyers, create in-the-moment cross-sell and up-sell opportunities and drive revenue-impacting business decisions.

10.      Content Square was founded in 2012 by Jonathan Cherki, who serves as CEO of Content Square SAS.

**FIRST CAUSE OF ACTION**

**(Infringement of Patent No. 8,886,552)**

11.      Medallia hereby re-alleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

12.      The '552 Patent, entitled "METHOD AND SYSTEM FOR ONLINE USER FEEDBACK ON WEBSITES AND SOFTWARE," was duly and legally issued on November 11, 2014.

13.      Medallia owns all right, title, and interest in the '552 Patent as well as the right to sue for, collect, and receive damages for past, present, and future infringements of the '552 Patent.  A true and correct copy of the '552 Patent is attached hereto as Exhibit A.

14.       The '552 Patent is valid and enforceable.

15.     Content Square has infringed and continues to infringe, literally and/or by the doctrine of equivalents, one or more claims of the '552 Patent by making, using, selling, and/or offering to sell its web analytics platform(s) and relatedservices (the "Accused Product" and/or "Accused Service"), alone or in coordination with one or more Technology Partners (https://partners.contentsquare.com/technology-partners) other than Medallia, including but not limited to Momentive Global Inc. (formerly known as SurveyMonkey) and Qualtrics International Inc., in violation of at least one claim of the '552 Patent in the United States and/or importing the Accused Product into the United States.  On information and belief, the Accused Product and/or Accused Service infringes at least claims 1 and 9 of the '552 Patent because it "helps companies understand hidden customer behaviors, and use those insights to drive more successful experiences" (https://ContentSquare.com/).

16.     For example, the Accused Product and/or Accused Service involve(s) computer systems that collect and analyze structured user feedback on websites, at least as shown by the examples of the screenshots below:[1]

---

[1] Highlighting, red text and text boxes have been added for emphasis to screenshots throughout the First Amended Complaint.

## Scrutinize and quantify negative feedback

Uncover why you're getting specific feedback on your digital properties through advanced integrations with leading Voice of Customer vendors, and quantify the impact on your top line. Link behavior analysis with those who have left feedback, enabling you to quickly contextualize why visitors are saying what they do. Learn more about Voice of Customer integrations.

https://Content Square.com/why-Content Square/design-ux-teams/



https://Content Square.com/partners/ -- Video Clip "The Power of Customer Insights Everywhere The Content Square Experience Partner Ecosystem & Open APIs"

17.    Moreover, at least as shown by the examples of the screenshots below, the Accused Product and/or Accused Service generate(s) and provide(s) structured feedback forms for providing website user feedback on website user interaction that includes user-selectable

feedback messages provided in a categorized and nested structure.



https://Content Square.com/partners/ -- Video Clip "The Power of Customer Insights
Everywhere The Content Square Experience Partner Ecosystem & Open APIs

18.    At least as shown by the examples of the screenshots below taken from a Content

Square video, the Accused Product and/or Accused Service further predict that a given user

intends to cancel a transaction or abandon a website based on one or more website action(s) of a

given user, and upon making such determination, automatically present a feedback form or an

invitation to a feedback form to the user in order to collect and analyze feedback data.  For

example, and without limitation, the Accused Product and/or Accused Service use a prior

action/behavior of a user on a website, such as a "friction signal" or "frustration signal," to

identify frustrations that may result in website abandonment (bounce rate) or loss conversion (i.e.

transaction cancelation) in order to identify the best timing and placement to solicit feedback.  At

the moment that a customer is experiencing frustration, the Accused Product/Service generates a

"live friction signal" that triggers/directs at least integrated Technology Partner Qualtrics to

immediately intercept and present a feedback form to the frustrated customer.



https://contentsquare.com/qualtrics/  -- Video Clip "Qualtrics + Contentsquare = Better Customer Experiences" at 1:29



*Id*. at 1:30



Leverage Contentsquares live friction signals

*Id*. at 1:35



to trigger Qualtrics signal site intercepts at the

*Id*. at 1:36



*Id.* at 1:39



*Id.* at 1:42



*Id*. at 1:45



*Id*. at 1:47

*See also* https://contentsquare.com/partners/, video at 0:41-1:07 ("Content Square provides signals when a website or app user engages with content, struggles, hesitates, or achieves a goal.  Allowing you to enhance the value of these [technology partners'] technologies. … [D]igging deeper into struggles you find in voice of customer tools to troubleshoot the cause of complaints quickly.").

As shown by at least the screen shots below, the Accused Product and/or Accused Service also provide analytics of website user journeys.



https://Content Square.com/platform/



## Reverse Journeys

See the pages visitors viewed before they arrived at particular pages and events such as Voice of Customer feedback, 404 site errors, site abandonment or conversion. Understand and quantify specific desirable or undesirable outcomes better.

https://Content Square.com/platform/customer-journey-analytics

19.     As shown at least by the examples of the screenshots below, the Accused Product and/or Accused Service also automatically collect(s) and analyze(s) website user feedback and include(s) functionality to provide at least one analysis report based on multiple website users, including a structured analysis report.



https://contentsquare.com/qualtrics/ -- Video Clip "Qualtrics + Contentsquare = Better Customer Experiences" at 1:19.



https://contentsquare.com/qualtrics/ -- Video Clip "Qualtrics + Contentsquare = Better Customer Experiences" at 1:21.



https://contentsquare.com/qualtrics/ -- Video Clip "Qualtrics + Contentsquare = Better Customer Experiences" at 1:24.



https://Content Square.com/platform/customer-journey-analytics

20.     As illustrated on Content Square's website at least by the examples of the screenshots below, the Accused Product and/or Accused Service further provide(s) a web analytics interfacing functionality to receive web behavior analysis of the user, wherein the analysis identifies the user behavior and produces an analysis report.



https://contentsquare.com/why-contentsquare/design-ux-teams/



https://contentsquare.com/why-contentsquare/design-ux-teams/

16



# Pinpoint website elements causing friction

Expose the "why" behind visitors' struggle by seeing the full digital journey within pages and across visits. Analyze behaviors with your team to align all stakeholders around your visitors' actual experiences. Learn more about Journey Analysis

**Learn More**

https://Content Square.com/why-Content Square/design-ux-teams/



## Customer Journey Analytics

See how visitors progress through your site, page by page, from entry to exit. Discover your biggest opportunities and frustrations within minutes.

https://Content Square.com/platform/customer-journey-analytics/

17



# Segmentation and Drill-down

Use segments to narrow your focus, such as customers who arrived from a specific channel or campaign. Shortcut straight to Zone-based Heatmaps or Behavior Analysis for further insight.

https://contentsquare.com/platform/customer-journey-analytics/



https://Content Square.com/why-Content Square/design-ux-teams/



https://Content Square.com/platform/

21.     Likewise, **at least as shown by the examples of the screenshots below,** the automatic analysis of website user feedback produced by the Accused Product and/or Accused Service include(s) factoring the received web behavior analysis in the automatic analysis and producing at least one analysis report that includes an integration of the received web behavior analysis.



Use Contentsquares journey analysis to see



the most common paths leading up to specific





https://contentsquare.com/qualtrics/ -- Video Clip "Qualtrics + Contentsquare = Better Customer Experiences".

https://Content Square.com/platform/struggle-analysis/



https://Content Square.com/platform/



# Segmentation and Drill-down

Use segments to narrow your focus, such as customers who arrived from a specific channel or campaign. Shortcut straight to Zone-based Heatmaps or Behavior Analysis for further insight.

https://Content Square.com/platform/customer-journey-analytics/



# Opportunity Scoring

See which pages have experience issues and opportunities ranked by impact on conversion. Lift the covers and understand what behaviors or issues such as rage click impacted experience scores.

https://Content Square.com/platform/ai-insights/



746,250 visits impacted by 47 errors

27% of traffic (56,284 visitors) in the last 30 full days

https://contentsquare.com/platform/struggle-analysis/

22.     Also shown at least in the screenshots from Content Square's website provided in connection with the above paragraph, the Accused Product and/or Accused Service analyze feedback for each path in relation to each of two or more stages in the website-based process separately leading up to the specific types of feedback and it factors in behavioral analysis for each path relating to each of the two or more stages. The journey analysis of the Accused Product/Service provide(s) different paths leading to different types of feedback, resulting in analysis of the user feedback in relation to two or more different stages. Each path of the Accused Product/Service is analyzed based on its specific type of feedback and corresponds to analyzing user feedback in relation to each of two or more stages in the website-based process.

23.     Upon information and belief, Content Square has been and is also responsible for direct infringement of one or more method claims of the '552 Patent, including at least claim 9, on a joint or divided infringement theory because Content Square performs one or more claimed steps, and has conditioned the benefit of a financial relationship with itself on a Technology Partner's (e.g., Momentive Global's and/or Qualtrics') performance of at least one other method step, and Content Square controls the manner or timing of that performance through contractual and/or technological means.

24.     Upon information and belief, and as evidenced by the integration of their respective software and/or hardware, Content Square is also liable on a joint or divided infringement theory of claim 9 because it has formed a joint enterprise with its Technology Partners by agreeing to each perform certain steps of claim 9 for the common purpose of profiting from the marketing of products and/or services related to the Accused Product/Service, with Content Square and the partner(s) having equal voices and rights of control in the joint enterprise.

25.     Upon information and belief, Content Square has been and is also responsible for direct infringement of one or more system claims of the '552 Patent, including at least claim 1, on a joint or divided infringement theory because at least Content Square makes and uses a system that infringes through integrations that use another company's (e.g., at least Momentive

Global Inc. and Qualtrics International Inc.) software and/or hardware that comprise elements of the infringing system.  Content Square places this system as whole into service, and thereby controls it, through its operation of the Accused Product/Service.  Content Square benefits from this use, at least through its ability to offer the Accused Product/Service for sale to, and/or use by, others.  Upon information and belief, Content Square's users also directly infringe the '552 Patent in a similar manner by using the Accused Product to monitor one or more websites, which places the system as whole into service, and thereby users of the Accused Product/Service control the infringing system.  Content Square's users benefit from this use, at least through their ability to obtain information provided by the operation of the Accused Product/Service.

26.     Medallia is informed and believes, and on that basis alleges, that Content Square's infringement of the '552 Patent has been and continues to be intentional, willful, and without regard to Medallia's rights at least because it had knowledge of the '552 Patent (1) through Content Square's relationship with Medallia as a technology partner and in the course of becoming a technology partner, Content Square performed due diligence on Medallia's offerings; (2) through interactions and/or due diligence involving ClickTale, Ltd. and Kampyle, Ltd. that preceded Content Square's acquisition of ClickTale; (3) through Content Square's attorneys at Cooley LLP who represented Medallia during the acquisition of the '552 Patent; (4) through Content Square's attorneys at Cooley LLP who have represented Content Square adverse to Medallia subsidiaries and other parties in district court patent litigations and patent proceedings before the Patent Trial & Appeal Board since at least 2020; (5) through Content Square's attendance at trade shows and conferences where Medallia's offerings were discussed; and/or (6) by service of the original Complaint.  Alternatively, Content Square was at least willfully blind to the existence of the '552 Patent.

27.     Upon information and belief, Content Square has been and is inducing infringement of the '552 Patent through the dissemination of the products and services described above and/or the creation and dissemination of promotional materials, marketing materials, instructions, product manuals, professional services, and/or technical information that instruct

users such as its customers to use those products and services in a manner that infringes one or more claims of the '552 Patent, including but not limited to the Content Square web pages described above.  Upon information and belief, Content Square has been and is engaging in such acts of inducement with knowledge of the '552 Patent and knowledge that the induced acts constitute patent infringement, or willful blindness to that fact, in violation of 35 U.S.C. § 271(b).

28.     Upon information and belief, Content Square has been and is contributing to the infringement of the '552 Patent by selling or offering to sell the Accused Product, knowing it to be especially made or especially adapted for practicing the invention of the '552 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use, in violation of 25 U.S.C. § 271(c).

29.      Medallia is informed and believes, and on that basis alleges, that Content Square has profited from its infringement of the '552 Patent.

30.      Medallia has sustained damages as a direct and proximate result of Content Square's infringement of the '552 Patent.

31.      Medallia will suffer and is suffering irreparable harm from Content Square's infringement of the '552 Patent. Medallia has no adequate remedy at law and is entitled to an injunction against Content Square's continuing infringement of the '552 Patent. Unless enjoined, Content Square will continue its infringing conduct.

## PRAYER FOR RELIEF

WHEREFORE, Medallia prays for the following relief:

32.     A judgment that Content Square has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of the '552 Patent;

33.     An order and judgment preliminarily and permanently enjoining Content Square and its officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors, and assigns from further acts of infringement of the '552 Patent;

34.     A judgment awarding Medallia all damages adequate to compensate for Content Square's infringement of the '552 Patent, including its lost profits but in no event less than a reasonable royalty, along with prejudgment and post-judgment interest at the maximum rate permitted by law;

35.     A judgment awarding Medallia all damages, including treble damages, based on any infringement found to be willful, pursuant to 35 U.S.C. § 284, together with prejudgment interest;

36.     Actual damages suffered by Medallia as a result of Content Square's unlawful conduct, in an amount to be proven at trial, as well as prejudgment interest as authorized by law;

37.     A judgment that this is an exceptional case and an award to Medallia of its costs and reasonable attorneys' fees incurred in this action as provided by 35 U.S.C. § 285; and

38.     Such other relief as this Court deems just and proper.

Dated:  September 14, 2021                    RIMON, P.C.


                                    By:  */s/ Melissa R. Smith*
                                         RIMON, P.C.
                                         Karineh Khachatourian (CA SBN 202634) *Pro Hac Vice)*
                                         karinehk@rimonlaw.com
                                         Amir A. Tabarrok (CA SBN 238781) (*Pro Hac Vice)*
                                         amir.tabarrok@rimonlaw.com
                                         David T. Xue (CA SBN 256668) (*Pro Hac Vice*)
                                         david.xue@rimonlaw.com
                                         Nikolaus A. Woloszczuk (CA SBN 286633) (*Pro Hac Vice)*
                                         nikolaus.woloszczuk@rimonlaw.com
                                         Oren J. Torten (CA SBN 332720) (*Pro Hac Vice*)
                                         oren.torten@rimonlaw.com
                                         2445 Faber Place, Suite 250
                                         Palo Alto, California 94303
                                         Telephone: 650.461.4433
                                         Facsimile: 650.461.4433

                                         MELISSA R. SMITH (TX SBN 24001351)
                                         melissa@gillamsmithlaw.com
                                         GILLAM & SMITH, LLP
                                         303 South Washington Avenue
                                         Marshall, TX 75670
                                         Telephone:    903-934-8450
                                         Facsimile:    903-934-9257

                                         Attorneys for Plaintiff MEDALLIA INC.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on this the 14th day of September, 2021 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(b).

*/s/ Melissa R. Smith*
Melissa R. Smith
